Marshall, C. J.
The first question presented for determination arises out of the issue made by the first defense of the answer alleging that the original suit filed in this cause, No. 17034, was dismissed on June 1, 1921. The allegations of the first defense and the testimony in support thereof show that Roy R. Stuart, the prosecuting attorney of Lucas county, the relator, wrote a letter about that date to the attorney general and that the attorney general delivered this letter, or a copy thereof, to the clerk of this court, and that thereupon the attorney general advised the prosecuting attorney of Lucas county that the cause had been dismissed. No action was taken by the clerk of this court, nor by the court itself, nor by any judge of this court, relative to the letter, and nothing pertaining thereto appears upon the journal or other record of the court. No ques *179 tion is therefore presented as to the power of a plaintiff in an action to dismiss his proceeding without any action on the part of the court, neither is any question presented as to the power of the clerk to formally enter a dismissal of a cause upon the journal of the court at the request of a party plaintiff, or his counsel, without any action on the part of the court itself or any judge thereof, neither is any question presented as to the power of a relator in any suit in quo warrcmto to dismiss the proceeding without the consent or concurrence of the parties beneficially interested in the suit. The only fact about which this court need be concerned is the fact that the records of the court do not disclose any action either on the' part of those beneficially interested, the relator, the clerk of this court, or any member of the court. The letter written by the prosecuting attorney of Lucas county to the attorney general of the state of Ohio was not such a document as the clerk was bound to file in this cause, neither does the record show that the clerk in fact filed it. Every court speaks through its journal, and inasmuch as no order of dismissal was entered upon the journal of this court we are not called upon to inquire or determine under what circumstances or in what manner such an order might properly be made, but it is sufficient to say that no order was in fact made.
The doctrine of estoppel cannot aid the defendants in this case, because it does not appear that their position has been altered by the letter referred to or that they have been misled to their prejudice. These principles governing the doctrine of estoppel are so well settled that it is unnecessary to cite any *180 authority in support thereof. The ease must therefore stand for determination upon the issues made by the other defenses.
All of the other issues in the case turn upon the one vital question whether or not the preferred stock issued and outstanding, which was authorized by the action of the corporation on August 29, 1916, is entitled to voting powers. The discussion of that vital question under the allegations of the numerous defenses of the answer must be resolved into two elements, first, the question raised by the fifth defense as to whether the preferred stock was regularly issued and the action taken by the stockholders and officers of the company was in such compliance with the provisions of the statutes as would give the preferred stock validity as such or would merely create an obligation of debtor and creditor between the corporation and the holders thereof; and, second, assuming the stock to be valid preferred stock, whether or not it has voting power.
We will first determine whether the preferred stock was regularly issued and whether the stock which was actually issued and is now outstanding has a valid legal .status. This issue is raised by the fifth defense, and it is alleged that at the time action was taken by the stockholders to authorize its issue there still remained $50,000 of common capital stock unissued and not even subscribed for. It is, on the other hand, pointed out in the record that at the time it was sought to obtain authority to issue preferred stock, on August 26, 1916, a certificate was filed in the office of the secretary of state, which certificate stated that the capital stock of said company was fully subscribed for and an installment of 10% on *181 each share of stock had been paid. It is, however, admitted by all parties to this controversy that that certificate did not state the truth and that $50/000 of the common capital stock had not at that time in fact been subscribed. The fact that this certificate was made by John J. Urschel, one of the defendants to this action, who was then president of the company, is not material and does not necessarily operate as an estoppel against him, because the other parties to this controversy were equally cognizant of the falsity of the certificate and cannot therefore claim that they have been prejudiced or in any way misled thereby, or that they have been put in a different situation, or that they have done or omitted to do anything which they would not have done or omitted had said certificate not been made. The situation therefore stands as though the certificate had stated that $50,000 of the common capital stock remained unissued and unsubscribed. This question depends for its determination upon the status of corporations and the law of Ohio regulating their formation and procedure. It is well settled that corporations are artificial beings depending for their existence upon the law of the land. A definition which has been universally accepted is that found in the Dartmouth College case, 4 Wheat., 518, 636. It reads in part as follows: “A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it poissesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence.”
In the state of Ohio corporations are the creatures of statutes and the legislature is authorized by *182 the constitution to enact general laws for their formation. While corporations in Ohio have all powers expressly conferred upon them by statute, and also such other powers as are necessarily incident thereto, all such powers must be exercised in conformity with, the manner pointed out by statute in all cases where the statutes contain regulatory provisions, and a failure to so conform with reasonable strictness renders any attempted action invalid. It is just as important and just as necessary that corporations organized under Ohio laws should proceed in the manner required by statute, in matters of form as well as substance, as it is that persons executing a last will and testament should conform in matters of both form and substance to the statutory provisions pertaining thereto.
Having made these preliminary general observations, let us look to the statutes governing the authorization and issuance of preferred stock in a corporation where only common stock was authorized by its original articles and apply those statutes to the facts as shown by the record in this case to determine whether this particular preferred stock is valid. The validity of the preferred stock in this case is challenged by the defendants, and it is urged by them that unless the original articles of incorporation make provision for preferred stock a later increase of stock which makes provision for preferred stock can only be made by amendment of the articles of incorporation. This case must be determined upon the state of the law as it existed on August 29, 1916, the time that this preferred stock now issued and outstanding was authorized, and all discussion of statutes and all quotations therefrom *183 will be based upon the law as it then existed without reference to subsequent amendments. Our attention is called to Section 8625, General Code, which provides what the original articles of incorporation must contain. Paragraph 4 of that section provides that the articles must contain “the amount of its capital stock, if it is to have capital stock, and the number of shares into which it is divided.” It is claimed from this, by the defendants, that if the original articles do not provide for both common and preferred stock, preferred stock can only be authorized thereafter by an amendment to the articles. This claim is not well founded, because the language above quoted does not require the .original articles to state the kinds of capital stock, but merely the amount of its original authorization. It cannot be successfully contended that an authorization of preferred stock in a corporation which was originally authorized to carry only common stock must be made by an amendment to the original articles., because all amendments to the original articles must be under and by virtue of the provisions of Section 8719, General Code, and this section will be found to contain not only what may be done by amendment but is also very specific in providing what may not be done by amendment. The last sentence of that section contains the following, “but the capital stock of a corporation shall not be increased or diminished, by such amendment, nor the purpose of its original organization substantially changed.” Provision for preferred stock in a corporation which originally authorized only common stock cannot be said to be a substantial change of the purposes of its original organization. That language has only to do with *184 paragraph 3 of Section 8625, General Code. Inasmuch as it is stated in Section 8719 that the capital stock shall not be increased or diminished by amendment, this must be held to include not merely common stock but also preferred stock. The authorization of preferred stock in a corporation which had only common stock before must necessarily be considered to be an increase of the capital stock, and since it is forbidden to be done by amendment, by the language above quoted, it necessarily follows that additional authorization of preferred stock, as well as common stock, made after organization must be by virtue of the authority contained in other sections of the statutes. Such other statutes must be Sections 8698 and 8699, General Code. Section 8698 pertains to changes in common capital stock, and Section 8699 equally clearly provides only for preferred stock. If Section 8698 applies also to preferred stock, then it is quite clear that preferred stock can only be authorized after all of the original capital stock is fully subscribed for and an installment of 10% on each share of stock paid thereon. We are of the opinion, however, that inasmuch as Section 8698 contains no mention of preferred stock, and the only mention of the authorization of preferred stock is found in Section 8699, it was not intended that the provisions of 8698 must be complied with, as well as the provisions of 8699, in making an authorization of an increase of capital stock by issuing preferred stock only.
It is further contended by defendants that Sections 8668 and 8669 have peculiar application to the authorization of preferred stock, and that by virtue of the language of those sections such stock cannot be *185 created otherwise than by provisions in the articles of incorporation or amendments thereto. Those sections must be held to be in pari materia with Section 8625 providing what original articles of incorporation must contain, Section 8719 providing for the manner and mode of amending articles of incorporation, and Section 8699 providing for the increase of the capital stock by the issuance of preferred stock. The only manner 'in which Section 8699 can be reconciled with all of the other sections herein referred to is to construe that section as an additional authority whereby preferred stock may be created after organization without pursuing the statutory procedure in amending the articles of incorporation. Procedure under Section 8699 does not technically amount to an amendment to articles of incorporation, but when the certificate of increase under Section 8699 is filed with the secretary of state it has precisely the same effect as, the certificate filed with the secretary of state pursuant to Section 8721, General Code, relating to amendments to articles of incorporation. If in the instant case the stockholders had attempted to increase the stock by issuing preferred stock by proceeding under Section 8719, they would have been confronted by the inhibition of that statute, which in peremptory language forbids the increase of capital stock in such manner. "While there is much inconsistency in the several provisions of the statutes under discussion, the stockholders in this case have followed that course which has been almost universally followed by Ohio corporations and which at least has the sanction and authority of some sections of the statutes and is not forbidden by others. Our conclusion there *186 fore is that the allegations of the fifth defense do not state a valid defense to the allegations of the petition.
Having determined that the preferred stock is valid, it only remains to be determined whether it has voting power.
Much of the former discussion in this opinion is applicable to this latter question. It has already been observed that corporations are creatures of the law and can only come into existence in the manner prescribed by law, and that all of their proceedings must be in fair and substantial compliance with law, in so far as such procedure has been marked out by statute.
This record shows not only that the certificates of preferred stock contain no qualifications or limitations upon voting power, but also that the certificate filed with the secretary of state, on August 29,1916, also failed to make any provision for such restriction or limitation. Nowhere do the statutes affirmatively place any limitation or restriction upon voting power of the preferred stock, and if any such limitation or restriction exists it must be by virtue of the action of the corporation itself, through its stockholders, in such manner as is provided by the general corporation laws of the state.
It is alleged in the defenses to this petition that there was prior to the issuance of the preferred stock equal control of said corporation by the two factions, that there was at the time of the authorization of such preferred stock an agreement and understanding that no advantage would accrue to either side in the management and control of the corporation, that this thought and purpose was for *187 several years carried out, and that there was no attempt to exercise voting power with relation to the preferred stock until January, 1920. If these allegations of the answer are material, it must be conceded that they have been fairly proven. We have .reached the conclusion, however, that inasmuch as Section 8669, (General Code, requires restrictions and qualifications upon voting powers to be expressed in the certificate of incorporation, such restrictions and qualifications cannot otherwise be created, and that however strong the equities might be in favor of the defendants in this case the situation is controlled entirely by the statute, uninfluenced by any agreement that might have been made at the time, and uninfluenced by any belief that might have been entertained by any of the stockholders, not incorporated in the certificate which was filed with the secretary of state.
It follows from the foregoing conclusions that in the error proceeding, cause No. 17031, the judgment of the court of appeals must be reversed.
In the original suit in this court, cause No. 17034, it is the judgment of this court that the relator is entitled to the relief prayed for and there will be a judgment of ouster.

Judgment reversed in cause No. 17031.

Judgment of ouster in cause No. 17034.

Johnson, Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.